106 F.3d 407
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FEDERAL TRADE COMMISSION, Plaintiff-Appellee,
v.
PARADISE PALMS VACATION CLUB, Defendant,
James R. Quincy, Defendant-Appellant.
 No. 96-35529.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 7, 1996.*
Decided Jan. 15, 1997.
 
 1
 Before: BRUNETTI and O'SCANNLAIN, Circuit Judges; WILLIAMS,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 James R. Quincy appeals pro se from the district court's order finding him in contempt for his failure to pay a $50,000 fine to the Federal Trade Commission ("FTC") and ordering incarceration for his contempt. The district court had jurisdiction pursuant to 18 U.S.C. § 401. We have jurisdiction under 28 U.S.C. § 1291.
 
 I.
 
 4
 The Order of Civil Contempt at issue here stems from an action initiated by the FTC against Quincy and others in 1981. The FTC alleged that Quincy had violated the Federal Trade Commission Act by making false statements in order to induce consumers to purchase memberships in vacation timeshare clubs. On August 9, 1988, Quincy and the FTC entered into a stipulated agreement settling all the charges in the FTC's complaint. This injunction strictly limited Quincy's future business activities.
 
 
 5
 In June 1992, the FTC moved to have Quincy held in contempt for violating the injunction. The FTC alleged that Quincy, as the principal officer and director of a corporation known as Feelin' Great International, Inc., had misrepresented the nature and value of the vacation packages being sold. The FTC argued that as part of any contempt order, Quincy should be required to post a bond that would be used to redress consumers injured by Feelin' Great. On July 14, 1992, the district court (per Chief Judge Dimmick) granted the FTC's motion and entered an order holding Quincy in contempt. Quincy was ordered to obtain a $75,000 bond or establish a "redress account" with the FTC in the amount of $50,000 "for the benefit of the consumers who have suffered financial injury...."
 
 
 6
 Quincy failed to establish the court-ordered redress account, and in October 1992, the FTC moved to have Quincy incarcerated as a result of this failure. At about the same time, Quincy moved to have the court modify the contempt order, arguing that he was able to pay only $28,000 and that he needed two additional years to pay the balance. On June 3, 1993, the district court issued an order modifying its contempt order, and gave Quincy two additional years (until June 5, 1995) to establish the $50,000 fund.
 
 
 7
 Quincy made no payment to the fund during those two years. Therefore, in December 1995, the FTC moved for an order of contempt and coercive incarceration based on Quincy's failure to comply with the June 3, 1993 order. Quincy filed an opposition pro se to the contempt motion.
 
 
 8
 On February 22, 1996, Quincy filed for bankruptcy and submitted an attorney's opinion to the district court contending that contempt proceedings were stayed by the bankruptcy. On April 12, 1996, the district court held there was no stay pending bankruptcy proceedings, explaining that the $50,000 payment was intended to "uphold the dignity of the court" and that, accordingly, the bankruptcy did not stay further proceedings on the FTC's contempt motion. Quincy was ordered to appear on May 1, 1996.
 
 
 9
 On April 29, 1996, Quincy filed a motion for appointment of counsel to represent him at the contempt hearing. On May 1 and 3, 1996, the court held hearings first on Quincy's motion for appointment of counsel and then on the contempt motion. The court denied Quincy's motion for appointment of counsel after finding that Quincy was not indigent and had demonstrated an ability to represent himself competently.
 
 
 10
 At the close of the hearing, the court found Quincy in contempt of the court's order of June 3, 1993, and ordered him incarcerated until he substantially complied. (The finding is memorialized in a written order of May 6, 1996.) In so concluding, the court noted that Quincy failed to keep traceable records of income, that the operations of the various companies with which Quincy and his wife were involved indicated a deliberate attempt to obscure the source and disbursement of funds, and that the only logical explanation for creation of a corporation controlled by Quincy's wife was to obscure the payment of commissions generated in a discount long distance telephone business in which the couple was involved. Testimony at the contempt hearing indicated that some $82,000 in wire transfers could not be identified. The court also noted that testimony from Quincy and his wife established that payment to the FTC was not a high priority for them. For example, Quincy and his wife had traded in a Mercedes Benz automobile and purchased a new Cadillac, with payments of more than $700 a month.
 
 
 11
 On May 26, 1996, Quincy filed a timely notice of appeal of the court's order on May 13, 1996. At the same time, he moved this Court for a stay of the district court's order pending appeal. On May 16, 1996, that motion was denied by this Court (per Judges Reinhardt and Fernandez).
 
 
 12
 On May 26, 1996, Quincy wrote to Judge Dimmick seeking to purge his contempt. He enclosed a check for $5,000 and asserted that his was unable to pay any more at that time. On June 28, 1996, the district court accepted Quincy's offer as substantial compliance with its order of June 3, 1993, held that Quincy had purged his contempt, and ordered Quincy released from incarceration. The court established a new payment schedule, requiring him to make monthly payments to the FTC until his remaining obligation of $45,000 had been paid in full.
 
 
 13
 On July 8, 1996, the FTC moved to have this Court dismiss as moot Quincy's appeal of the May 6, 1996, contempt order. Quincy opposed the FTC's motion arguing that his appeal was not moot because "I lost two months of my life and liberty, my ability to make a living [sic] and have been forced to offer and pay moneys to the [FTC], a collection action clearly stayed by my personal bankruptcy proceeding...."
 
 
 14
 In an order dated August 12, 1996, this Court, per Appellate Commissioner Shaw, denied the FTC's motion to dismiss the appeal "without prejudice to renewing the arguments in the answering brief. See National Indus. v. Republic Nat'l Life Ins. Co., 677 F.2d 1258, 1262 (9th Cir.1982) (merits panel can consider appellate jurisdiction despite earlier denial of motion to dismiss)."
 
 II.
 A.
 
 15
 The FTC argues that the issues raised in this appeal are moot. This court reviews such jurisdictional issues de novo. United States v. Yakima Tribal Court of the Yakima Indian Nation, 794 F.2d 1402, 1405 (9th Cir.1986). Any issues of law not rendered moot we review de novo. Twenty-Three Nineteen Creekside, Inc. v. Commissioner, 59 F.3d 130, 131 (9th Cir.1995).
 
 B.
 
 16
 On appeal, Quincy argues that the May, 1996, contempt order was improper for the following reasons: 1) the district court failed to give Quincy sufficient notice regarding whether the contempt proceeding was criminal or civil in nature; 2) the court erred by not granting Quincy's motion for court-appointed counsel; 3) the court erred in finding that Quincy possessed the ability to comply with the court's 1993 modified order to pay the $50,000 penalty, and in restricting Quincy's presentation of evidence to prove that he could not comply; 4) the court failed to give Quincy sufficient notice prior to the contempt hearing of the special master's report; 5) the court erred in determining that the FTC's motion for contempt was not stayed by Quincy's petition for bankruptcy; and 6) the court erred in determining that the FTC's collection action was not stayed by Quincy's petition for bankruptcy.
 
 
 17
 The FTC argues, and we agree, that the first five contentions in Quincy's appeal are moot. Upon Quincy's payment of $5,000 to the fund, the district court held that Quincy had substantially complied with the court's order and had therefore purged his contempt. Compliance with a contempt order renders an appeal moot because the appellate court is left with no remedy to afford the appellant. Davies v. Grossmont Union High School District, 930 F.2d 1390, 1394 (9th Cir.1991). Here, no live case or controversy remains for adjudication. A review of the contempt order cannot provide Quincy with any relief for the time he has already spent in jail.
 
 
 18
 Quincy contends however that the issues remain appealable because he "lost two months of [his] life and liberty [and his] ability to make a living...." By this, Quincy appears to argue that the order of incarceration resulted in a collateral deprivation of his civil rights. This alleged deprivation will not save the issues from mootness. Unlike a criminal conviction, an adjudication of civil contempt carries with it no possibility of collateral deprivations of civil rights. Marshall v. Whittaker Corp., Berwick Forge & Fabricating Co., 610 F.2d 1141, 1145 (3d Cir.1979).
 
 
 19
 Moreover, Quincy does not challenge the validity of the underlying order to pay the $50,000.[1] Therefore, reversal of the district court's finding of contempt will not provide the contemnor with any actual, affirmative relief.
 
 
 20
 Unlike the other issues presented, the question as to whether Quincy's petition for bankruptcy stays the FTC's collection action is not moot. Quincy remains under a continuing obligation to make payments to the FTC, an obligation which, if Quincy's argument has merit, would be stayed pending bankruptcy proceedings. We therefore examine the merits of his argument.
 
 III.
 
 21
 Quincy contends that the district court erred in determining that his petition for bankruptcy did not stay his obligation to pay the $50,000 fine to the FTC. The district court held that the debt was not dischargeable in bankruptcy because it is in the nature of a fine or a penalty to uphold the dignity of the court. Under 11 U.S.C. § 523(a)(7), a petition for bankruptcy does not discharge an individual debtor from any debt to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. See U.S. Sprint Communications Co. v. Buscher, 89 B.R. 154, 155-56 (D.Kan.1988) (discussing cases).
 
 
 22
 Quincy does not dispute that the FTC is a governmental unit, but he does contest the district court's characterization of the $50,000 sum as a payment to uphold the dignity of the court rather than as compensation to the individuals injured by his fraudulent trade practices. The 1992 contempt order specified that Quincy establish a $50,000 "redress account" with the FTC "for the benefit of the consumers who have suffered financial injury...." When the district court modified that contempt order in 1993, it gave Quincy two additional years to establish the fund, made no reference to redress, and made it clear that Quincy's obligation was to the FTC.[2] We agree with the FTC that the obligation is in the nature of a fine imposed on Quincy as a result of his defiance of the court's authority. Therefore, we hold that its collection is not stayed by Quincy's petition for bankruptcy. Courts have inherent power to enforce compliance with orders intended to uphold the dignity of the court, and that power is not stayed by a bankruptcy proceeding. Were it otherwise, a party could "blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge." Id. at 156.
 
 
 23
 Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs without oral argument. Fed.R.App.P. 34(a), 9th Cir.R. 34-4
 
 
 **
 The Honorable Spencer M. Williams, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We note that Quincy's obligation to pay $50,000 to the FTC did not come from the court's most recent contempt order, but from the court's order of June 3, 1992, which Quincy did not appeal. We also note that the order was drafted by Quincy's own counsel
 
 
 [2]
 In support of his argument, Quincy points out that the district court and the FTC have at various times labeled the sum as "redress" or "restitution" rather than as a fine or penalty. These semantic distinctions fail to go to the heart of the question, which, under 11 U.S.C. § 523(a)(7), is whether the $50,000 was "for actual pecuniary loss." The FTC points out, and Quincy does not dispute, that the obligation bore no relation to the amount of harm the FTC alleged Quincy had caused ($2.1 million)